# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

DEBORAH L. PARIS, )
)
Plaintiff, ) CIVIL ACTION
)
v. ) No. 18-1325-KHV
)
ANDREW M. SAUL,[1] )
Commissioner of Social Security, )
)
Defendant. )
_____)

## MEMORANDUM AND ORDER

Plaintiff appeals the final decision of the Commissioner of Social Security to deny disability and disability insurance benefits under Title II of the Social Security Act ("SSA"), 42 U.S.C. §§ 401-34. For reasons stated below, the Court reverses the decision of the Commissioner and remands for further proceedings.

### Procedural Background

On April 7, 2015, plaintiff filed her disability and disability insurance applications with the Social Security Administration. She alleged a disability onset date of December 19, 2014. Plaintiff's benefit application was denied initially and on reconsideration. On September 13, 2017, an administrative law judge ("ALJ") concluded that plaintiff was not under a disability as defined in the SSA and that she was not entitled to benefits. See Transcript Of Administrative Record (Doc. #14) filed December 7, 2018 ("Tr.") at 39-54. On July 12, 2018, the Appeals Council denied plaintiff's request for review. Tr. at 1-4. Plaintiff appealed the final decision of the Commissioner

---

[1] Andrew M. Saul is the current Commissioner of the Social Security Administration. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Andrew M. Saul is substituted for Acting Commissioner Nancy A. Berryhill as defendant.

to this Court.  The decision of the ALJ stands as the final decision of the Commissioner.  See 42 U.S.C. § 405(g).

## Factual Background

The following is a brief summary of the factual record.

Plaintiff is 56 years old.  She worked as a school teacher and choir director until December 19, 2014.  Since that time, plaintiff has worked occasionally as a substitute teacher and a choir director at her church, but has not engaged in substantial gainful activity.

**I.      Medical Evidence**

In October of 2013, plaintiff was diagnosed with stage 2 breast cancer.  She underwent a lumpectomy, chemotherapy and radiation therapy.  Plaintiff has been cancer free since 2015.

Due in part to her cancer treatments, plaintiff developed ongoing problems with fatigue, peripheral neuropathy, cardiomyopathy, thoracic ascending aortic aneurysm, migraines, sleep apnea and Hashimoto's thyroiditis.  The peripheral neuropathy in plaintiff's legs and feet has worsened over time and continues to cause pain.  Plaintiff treats her migraine headaches with medication, but it does not always control the headaches in a timely manner.

Beginning in June of 2015, Jeffrey Snyder, M.D., plaintiff's primary care physician, treated her for fatigue, peripheral neuropathy, migraine headaches and joint pain.  On September 7, 2016, Dr. Snyder noted that plaintiff's fatigue was so profound that she could "hardly function."  Tr. 841. By November 30, 2016, Dr. Snyder noted that plaintiff was still battling fatigue throughout the day and had not been able to substitute teach.  Tr. 849.

In March of 2017, Dr. Snyder submitted a medical source statement in support of plaintiff's claim for disability.  Dr. Snyder noted that plaintiff suffered from cardiomyopathy, thoracic ascending aortic aneurysm, migraines, moderate obstructive sleep apnea and hypothyroidism.

Tr. 795. Dr. Snyder opined that plaintiff could work for only two hours each day and that she is unable to perform the material duties of any occupation because of profound fatigue. Tr. 796-97. Dr. Snyder's opined that plaintiff's profound fatigue could not be fully explained by one condition and was likely caused by multiple factors. Tr. 797. Dr. Snyder noted that his "personal observation during recent office visits is that of a profoundly fatigued individual, with little tolerance for activities requiring significant energy expenditure." Tr. 797.

Beginning March 1, 2016, Clinton Malone, M.D., a cardiologist, treated plaintiff for cardiomyopathy and thoracic ascending aortic aneurysm. Dr. Malone opined that plaintiff had marked limitation of physical activity, as demonstrated by fatigue, palpitation, dyspnea or anginal discomfort with ordinary physical activity. Tr. 790. Dr. Malone opined that stress contributed to plaintiff's symptoms and that she was incapable of working even a low stress job. Tr. 790. Dr. Malone explained that with work, she experienced elevated blood pressure, shortness of breath and profound fatigue which worsened with exposure to high stress jobs. Tr. 790. Dr. Malone also noted that plaintiff's physical symptoms and limitations caused emotional distress including crying and anxiety. Tr. 790.

Carol Phelps, M.D., a medical consultant for Disability Determination Services, opined that plaintiff could perform light work. Dr. Phelps opined that plaintiff could stand or walk with normal breaks for about six hours in an eight-hour day. Tr. 121. Likewise, Dr. Phelps found that plaintiff could sit with normal breaks for about six hours in an eight-hour day. Tr. 121.

## II.     Plaintiff's Testimony

Plaintiff testified that she continued to work as a teacher throughout her cancer treatment. Tr. 87. She testified that beginning in August of 2014, she experienced "severe fatigue" while performing her job responsibilities. Tr. 87. By December of 2014, she was "falling apart" and

could "hardly make it through the day." Tr. 88. Plaintiff asked for accommodations at work, but her employer denied the request and eventually paid her a small settlement. Tr. 88.

Plaintiff testified that she stays at home most days. She takes care of her dogs, cleans her home as best she can, uses her computer and knits throw blankets. Tr. 78-82. She is able to prepare her own simple meals, do some laundry, drive and do limited grocery shopping. Tr. 78-82, 94.

Plaintiff testified that she lays down three times or more each day because she is unable to stand or sit for an extended period. Tr. 82, 100. If she sits for a long time, her legs start hurting which makes it difficult for her to stand up and makes her very stiff. Tr. 82.

Plaintiff testified that various medications cause her to experience migraines every few days. Tr. 84-85.

Plaintiff works approximately four hours each month as a church choir director. Tr. 89. In 2015, 2016 and the first quarter of 2017, plaintiff worked a limited amount as a substitute teacher. Tr. 90-91. She once tried to substitute teach two days in a row and was in bed the whole weekend after because she was so weak and tired. Tr. 100. Plaintiff no longer works as a substitute teacher. Tr. 90.

### III.  Vocational Expert Opinion

The ALJ asked the vocational expert about the work opportunities for a person who can lift and carry 20 pounds occasionally and 10 pounds frequently; who can push and pull the same as she can lift and carry; who can sit, stand and walk six hours in an eight-hour day; who can climb ladders, ropes or scaffolds; can stoop, crouch, kneel and crawl on a frequent basis; who can never work at unprotected heights or around moving machinery; who is required to work in a low stress job and not be exposed to work-related circumstances that could be dangerous. Tr. 106. The vocational expert testified that someone with that residual functional capacity and plaintiff's age,

education and work experience could work as a teacher, an electronics worker, cashier or a small products assembler. Tr. 106-08.

## IV. ALJ Findings

The ALJ denied benefits at step four, finding that plaintiff was capable of performing her past relevant work. In his order of September 13, 2017, the ALJ made the following findings:

> 1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2021.
>
> 2. The claimant has not engaged in substantial gainful activity since December 19, 2014, the alleged onset date.
>
> 3. The claimant has the following severe impairments: ascending aortic aneurysm; cardiomyopathy; obesity; and migraines.
>
> 4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.
>
> 5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to lift and carry 20 pounds occasionally, 10 pounds frequently; sit, stand, and walk six hours in an eight-hour day; push and pull the same as [she] can lift and carry. The claimant can climb ramps and stairs occasionally, but never climb ladders, ropes or scaffolds. The claimant can stoop, crouch, kneel, and crawl on a frequent basis. The claimant can never work around unprotected heights or around moving machinery. The claimant can work in a low stress job not requiring the worker to cope with work-related circumstances that could be dangerous to the worker and others.
>
> 6. The claimant is capable of performing past relevant work as a teacher/choir director as actually and generally performed. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity.
>
> 7. The claimant has not been under a disability, as defined in the Social Security Act, from December 19, 2014, through the date of this decision.

Tr. at 44-54 (citations omitted).

## **Standard Of Review**

The Court must determine whether the Commissioner's decision is free from legal error

and supported by substantial evidence. Wall v. Astrue, 561 F.3d 1048, 1052 (10th Cir. 2009). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Id. (quoting Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007)). It requires "more than a scintilla, but less than a preponderance." Id. (quoting Lax, 489 F.3d at 1084). Evidence is not substantial if it is "overwhelmed by other evidence in the record or constitutes mere conclusion." Grogan v. Barnhart, 399 F.3d 1257, 1261-62 (10th Cir. 2005). To determine if the decision is supported by substantial evidence, the Court will not reweigh the evidence or retry the case, but will examine the record as a whole, including anything that may undercut or detract from the Commissioner's findings. Flaherty v. Astrue, 515 F.3d 1067, 1070 (10th Cir. 2007).

## **Analysis**

Plaintiff bears the burden of proving disability under the Social Security Act. See Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989). The Social Security Act defines "disability" as the inability to engage in any substantial gainful activity for at least 12 months due to a medically determinable impairment. See 42 U.S.C. § 423(d)(1)(A). To determine whether a claimant is under a disability, the Commissioner applies a five-step sequential evaluation: (1) whether the claimant is currently working; (2) whether the claimant suffers from a severe impairment or combination of impairments; (3) whether the impairment meets an impairment listed in Appendix 1 of the relevant regulation; (4) whether the impairment prevents the claimant from continuing her past relevant work; and (5) whether the impairment prevents the claimant from doing any kind of work. See 20 C.F.R. §§ 404.1520, 416.920. If a claimant satisfies steps one, two and three, she will automatically be found disabled; if a claimant satisfies steps one and two, but not three, she must satisfy step four. If step four is satisfied, the burden shifts to the

Commissioner to establish that the claimant is capable of performing work in the national economy.  See Williams v. Bowen, 844 F.2d 748, 751 (10th Cir. 1988).

Here, the ALJ denied benefits at step four, finding that plaintiff is capable of performing past relevant work as a teacher and choir director.  Plaintiff argues that (1) at step two, the ALJ erred because he did not find that her chronic fatigue syndrome is a medically determinable impairment or that her peripheral neuropathy is a severe impairment; and (2) the ALJ erred in giving little weight to the opinions of her treating physicians.

**I.      Step Two Analysis**

Plaintiff argues that at step two, the ALJ erred because he did not find that her chronic fatigue syndrome is a medically determinable impairment or that her peripheral neuropathy is a severe impairment.  At step two, the ALJ must determine whether the claimant has an "impairment or combination of impairments which significantly limits [her] . . . ability to do basic work activities."  20 C.F.R. § 404.1520(c).  To establish a "severe" impairment at step two of the sequential evaluation process, plaintiff must make only a "de minimis" showing.  Cowan v. Astrue, 552 F.3d 1182, 1186 (10th Cir. 2008) (citation omitted).  The claimant, however, must show more than the mere presence of a condition or ailment.  Id.  If an impairment's medical severity is so slight that it could not interfere with or have a serious impact on plaintiff's ability to do basic work activities, it could not prevent plaintiff from engaging in substantial work activity and will not be considered severe.  Hinkle v. Apfel, 132 F.3d 1349, 1352 (10th Cir. 1997).  Step two is essentially "an administrative convenience to screen out claims that are totally groundless solely from a medical standpoint."  Higgs v. Bowen, 880 F.2d 860, 863 (6th Cir. 1988) (quotation marks and citation omitted).

As noted, the ALJ found that plaintiff's chronic fatigue syndrome was not a medically

determinable ailment.  He did so because he found no evidence that plaintiff was diagnosed with chronic fatigue syndrome by an "acceptable medical source based on objective findings."  Tr. 46.  While the medical records did not use the phrase "chronic fatigue syndrome," the references of various medical providers to "fatigue," "chronic fatigue" and "profound fatigue" are sufficient to satisfy the de minimus standard at step two.  See Hill v. Astrue, 289 F. App'x 289, 292 (10th Cir. 2008); Soc. Sec. Ruling (SSR) 14-1p, Titles II & XVI: Evaluating Claims Involving Chronic Fatigue Syndrome (CFS), 2014 WL 1371245, at *2 (S.S.A. Apr. 3, 2014) (medical experts characterize CFS in part as syndrome that causes prolonged fatigue lasting six months or more, resulting in substantial reduction in previous levels of occupational, educational, social or personal activities).  Likewise, the medical record references to plaintiff's peripheral neuropathy and resulting limitations are sufficient to show a severe impairment at step two.  Even so, any errors by the ALJ in this regard were harmless because he identified other severe impairments and continued with the sequential evaluation process.  See Carpenter v. Astrue, 537 F.3d 1264, 1266 (10th Cir. 2008) (any error at step two harmless because ALJ proceeded to next step of evaluation); Hill, 289 F. App'x at 292 (once ALJ finds claimant has any severe impairment, he has satisfied analysis for purposes of step two).  Indeed, in determining plaintiff's residual functional capacity, the ALJ specifically considered plaintiff's complaints of neuropathy and chronic fatigue.  Hill, 289 F. App'x. at 291-92 (error at step two harmless where ALJ considers effects of all "medically determinable impairments, both those he deems 'severe' and those 'not severe'").

## II.     Opinion Of Treating Physicians

Plaintiff argues that the ALJ erred in giving little weight to the opinions of her treating physicians.  A treating physician's opinion carries controlling weight if it is well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the

other substantial evidence in the record. Watkins v. Barnhart, 350 F.3d 1297, 1300 (10th Cir. 2003); 20 C.F.R. § 404.1527(c)(2); SSR 96-2p, Titles II And XVI: Giving Controlling Weight To Treating Source Medical Opinions, 1996 WL 374188, at *2 (S.S.A. July 2, 1996). Even if the ALJ does not give controlling weight to a treating physician's opinion, he must still give the opinion deference and weigh it using all of the factors set forth in the regulations. Watkins, 350 F.3d at 1300; see Mays v. Colvin, 739 F.3d 569, 574 (10th Cir. 2014); SSR 96-2p, 1996 WL 374188, at *4. In particular, the ALJ must consider the following factors: (1) the length of the treatment relationship and frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which relevant evidence supports the physician's opinion; (4) consistency between the opinion and the record as a whole; (5) whether the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion. Watkins, 350 F.3d at 1301; 20 C.F.R. §§ 404.1527(c)(2-6); see Newbold v. Colvin, 718 F.3d 1257, 1265 (10th Cir. 2013). After considering the factors, the ALJ must give "good reasons" for the weight he gives the treating source opinion. Watkins, 350 F.3d at 1300; see 20 C.F.R. § 416.927 ("We will always give good reasons in our notice of determination or decision for the weight we give your treating source's medical opinion."). If the ALJ rejects the opinion completely, he must give specific, legitimate reasons for doing so. See Watkins, 350 F.3d at 1301 (decision must be "sufficiently specific" to make clear weight adjudicator gave to treating source medical opinion and reasons for that weight) (quoting SSR 96-2p, 1996 WL 374188, at *5).

Plaintiff argues that the ALJ erred in giving "little weight" to the opinion of Dr. Snyder, her treating physician. The ALJ gave little weight to Dr. Snyder's opinion because (1) his opinion was inconsistent with the medical evidence of record, (2) his opinion was inconsistent with

plaintiff's daily activities, including the fact that she was able to substitute teach; and (3) he first saw plaintiff only one month before forming his opinion. Tr. 51. As explained below, these are not "good reasons" for the weight which the ALJ gave Dr. Snyder's opinion. Watkins, 350 F.3d at 1300.

As to the consistency of Dr. Snyder's opinions with the medical evidence, the ALJ noted Dr. Snyder's opinion that plaintiff could only work for two hours per day, and found that this opinion was inconsistent with her "normal physical examination findings, complete recovery from breast cancer, and stable heart condition." Tr. 51. The ALJ did not specifically explain how this limited medical evidence was inconsistent with Dr. Snyder's opinion. For example, that plaintiff no longer suffers from breast cancer is not inconsistent with Dr. Snyder's belief that in large part plaintiff's cancer treatment caused her profound fatigue. Likewise, plaintiff's normal physical examination findings and stable heart condition are not inconsistent with Dr. Snyder's opinion that plaintiff's profound fatigue could not be fully explained by one condition and was likely caused by multiple factors. Tr. 797. In addition, many of the same medical records that document normal physical examination findings, recovery from breast cancer and a stable heart condition also document fatigue.[2] The ALJ did not adequately explain how the medical evidence was inconsistent with Dr. Snyder's opinion that plaintiff could not work more than two hours per day because of profound fatigue.

Likewise, the ALJ did not adequately explain how plaintiff's daily activities were

---

[2] Indeed, the absence of a specific cause for plaintiff's fatigue tends to support her claim that she had chronic fatigue syndrome. While Dr. Snyder used the phrase "profound fatigue," rather than "chronic fatigue syndrome," he noted observations and findings that are consistent with a diagnosis of chronic fatigue syndrome. See SSR 14-1p, 2014 WL 1371245, at *4 (physician can make diagnosis of CFS based on person's reported symptoms alone after ruling out other possible causes for symptoms).

inconsistent with Dr. Snyder's opinion. Plaintiff identified a number of activities, but her statements were qualified. For example, the ALJ noted that Dr. Snyder's opinion was inconsistent with the fact that plaintiff was able to substitute teach. Plaintiff did not testify, however, that she was a substitute teacher on a regular basis. She testified that she sometimes worked as a substitute teacher for a half or full day. She only once tried to teach two days in a row, and she was then in bed the whole weekend because she was so weak and tired. Tr. 100. On September 7, 2016, Dr. Snyder noted that plaintiff's fatigue was so profound that she could "hardly function." Tr. 841. By November 30, 2016, Dr. Snyder noted that plaintiff was still battling fatigue throughout the day and had not been able to substitute teach. Tr. 849. The ALJ did not adequately explain why plaintiff's efforts to substitute teach on a sporadic basis were inconsistent with Dr. Snyder's opinion that plaintiff could only work two hours per day.

Finally, the ALJ stated that he gave Dr. Snyder's opinion little weight because he had first seen plaintiff only one month before forming his opinion. In fact, when Dr. Snyder completed the medical source statement, he had seen plaintiff for treatment some 10 times over the prior 20 months. Tr. 795, 813-66. Throughout the notes for these office visits, Dr. Snyder referred to plaintiff's fatigue. The ALJ's conclusion that Dr. Snyder had first treated plaintiff one month before he gave his opinion in March of 2017 is simply erroneous and insufficient to justify giving little weight to the opinion.

In sum, the ALJ did not provide "good reasons" for the little weight which he assigned to Dr. Snyder's opinion. Watkins, 350 F.3d at 1300. Accordingly, the Court remands so that the ALJ can reevaluate the weight afforded to Dr. Snyder's opinion and provide reasons for the weight given; and consider at that point whether changes to plaintiff's residual functional capacity are warranted. In addition, at step two, the ALJ should clarify whether plaintiff's chronic fatigue

syndrome is a medically determinable impairment and whether her peripheral neuropathy is a severe impairment.[3]

**IT IS THEREFORE ORDERED** that the Judgment of the Commissioner is **REVERSED** and **REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this Memorandum And Order.

Dated this 6th day of September, 2019 at Kansas City, Kansas.

s/ Kathryn H. Vratil
KATHRYN H. VRATIL
United States District Judge

---

[3] Plaintiff also argues that the ALJ erred (1) in giving little weight to the opinion of Dr. Malone, her treating cardiologist, and (2) in failing to include all of her symptoms and the findings of Drs. Snyder and Malone in formulating the hypothetical question to the vocational expert. Because the Court remands for the ALJ to reevaluate the weight afforded to Dr. Snyder's opinion, it need not reach these additional arguments.